UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LAW OFFICES OF RODRIGO S. DA SILVA,
P.A., a Florida for profit corporation

    Plaintiff,

                                              Case No.:

v.

AUCKLAND HOLDINGS, LLC, a Florida
limited liability company

    Defendant.
_____/

## COMPLAINT FOR DAMAGES

Plaintiff, Law Offices of Rodrigo S. Da Silva, P.A. ("Plaintiff"), by and through undersigned counsel, hereby files its Complaint for Damages against Defendant, Auckland Holdings, LLC ("Defendant"), and in support thereof states as follows:

### INTRODUCTION

1. This is a civil action that arises from the unpaid legal bill of Plaintiff for legal work and out of pocket expenses performed and/or incurred by Plaintiff in connection with the action styled *James Correia vs. Luciana Soledade Rock*, Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2019-031684-CA-01 (the "Correia Litigation"). Defendant assumed the defense costs of its consultant, Luciana Soledade Rock ("Rock") and actually paid Plaintiff's legal bills in connection with the Correia Litigation except for the last invoice issued by Plaintiff on October 17, 2022 in the amount of $161,024.60. *See* **Exhibit A**, Redacted Invoice.

### PARTIES, JURISDICTION, AND VENUE

2. Plaintiff is a for profit corporation under the laws of Florida. Plaintiff is organized as a professional association to conduct business as a law firm rendering legal services and services

incident to the practice of law.  Plaintiff is headquartered at 777 Arthur Godfrey Road, Suite 402, Miami Beach, FL 33140.

3. Defendant Auckland Holdings, LLC ("Auckland") is a Florida limited liability company with three (3) members: (1) Duxfor Global Inc. ("Duxfor"); (2) Hayworth Global Real Estate Ltd. ("Hayworth"); and (3) New Bering, LLC ("New Bering").  Duxfor and Hayworth are corporations organized under the laws of the Commonwealth of the Bahamas with their principal place of business in the Federative Republic of Brazil.  New Bering is a Florida limited liability company with one member: New Bering Investments, Ltd. ("New Bering Investments").  New Bering Investments is a corporation organized under the laws of the Commonwealth of The Bahamas with its principal place of business in the Federative Republic of Brazil.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (a), which confers original jurisdiction in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of a State and citizens or subjects of a foreign state…".  In this action, Plaintiff is seeking the damages in the amount of at least $161,024.60 plus interest for unpaid attorney's fees and costs incurred by Plaintiff in connection with the Correia Litigation.

5. Under 28 U.S.C § 1332(a)(1) and (2), diversity exists between "(1) citizens of different States; or between (2) citizens of a State and citizens or subjects of a foreign state."

6. At the time of filing of this action, there is full diversity citizenship between Plaintiff and Defendant because Plaintiff is a Florida citizen, being a Florida for profit corporation with its principal place of business in Miami-Dade County and Defendant is a foreign citizen as provided in paragraphs 3 of this Complaint.

## **GENERAL ALLEGATIONS**

7. On October 25, 2019, James Correia ("Correia") a business partner of Carlos Suarez ("Suarez") filed a Complaint against Luciana Soledade Rock ("Rock"). *See* **Exhibit B**, Complaint. Upon information and belief, Suarez is one of or the sole ultimate beneficial owner of Defendant. Rock's cousin, Maria Paula Lanat, is Suarez's wife. *See* **Exhibit C ¶ 2**. Correia, Rock, and Suarez were all defrauded by a third party, Fábio Catão ("Catão"). *Id.*

8. Catão, a Brazilian citizen who resides in the United States approached Suarez to seek his investment in a "Project." *Id.* The Project consisted in the management of fund involving billions of assets supposedly seized by the United States and other government agencies in Europe. *Id.* According to Catão, he was the straw man and money launderer for former officials of the Brazilian government, including at least one former President of Brazil. *Id.* Catão represented to Suarez that he brokered a deal with the law enforcement authorities and that he had the power to appoint an administrator for the fund containing billions of forfeited assets. *Id.* According to Catão, the various law enforcement agencies that seized the assets of the Project demanded that the funds be re-invested in Brazil to fund infrastructure projects. *Id.* Correia was supposed to be the fund manager for the Project and Rock was supposed to be the General Counsel. *Id.*

9. The fraudulent scheme carried out by Catão, his co-conspirators, and aiders and abettors lasted for approximately two (2) years. During that process Catão obtained from Suarez, and his entities, hundreds of thousands of dollars for activities supposed to be connected to the due diligence of the Project and the subsequent administration of the fund. *Id.*

10. At some point during the Project, Catão and Correia had a fall out and Catão decided that Correia could no longer be the fund administrator of the so-called Project that was nothing more than a fraudulent scheme. *Id.* ¶ 3. Correia became angry because he thought Suarez was cutting him out of the deal and he sued Rock in the Correia Litigation for the sole purpose of obtaining documents

3

from Rock. *Id.* Prior to filing the lawsuit, Correia attempted to obtain the requested documents from Rock, but at this time Suarez and Correia were engaged in a series of disputes against each other, and Suarez did not want Correia to obtain any documents. Suarez demanded that Rock refuse to turn any documents and Correia ultimately filed suit. *Id.* Suarez's company, the Defendant, assumed the legal fees and costs associated with Plaintiff's legal representation of Rock who provided consulting services for Defendant through her company Amazonas LLC, in all pre-suit activities as well as throughout the litigation. *Id.*

11. Suarez designated one of his deputies, Ivan Pio de Azevedo ("Azevedo") to manage the Correia Litigation and he provided assistance to Rock in her defense. *Id.* ¶ 4. Upon information and belief, and because of the nature of various business and their involvement with government agencies and officials in Brazil, Suarez never interacts directly with persons outside of his organization. Based upon representations to undersigned, Azevedo is one of the agents of Suarez and his companies. According to Azevedo, he manages all "special projects" or miscellaneous projects that do not fall under any of the other operational branches of Suarez's business empire. Thus, all communications relating to the so-called Project were routed through Azevedo, including the communications with Catão, Rock, other Project participants, as well as Plaintiff and undersigned counsel.

12. In his role as Defendant's agent, Azevedo represented multiple times to both Rock and Plaintiff's principal, Rodrigo Da Silva, that Suarez would cover all the legal fees and expenses associated with the Correia Litigation and in fact that Auckland would pay for all of the invoices issued by Plaintiff. *Id.* In fact, Auckland made payments for Plaintiff's prior invoices issued in connection with the Correia Litigation. *See* **Exhibit D**, incoming wire transfer e-mails from Plaintiff's bank showing incoming wires from Suarez and Auckland to pay for Rock's fees and expenses. Moreover, another deputy of Suarez, Fernando Hupsel ("Hupsel"), demanded that Plaintiff re-issue an invoice for services rendered to Rock in connection with the Correia Litigation so that the payee would be

4

Defendant presumably to improperly deduct these legal expenses for federal and state income tax purposes.

13. Suarez, through his employee and/or agent Azevedo, represented that Suarez would never agree to settle the Correia Litigation and demanded that Rock resists all attempts to produce documents and information. Suarez, through Azevedo, manifested his wish that the Correia Litigation proceed all the way to trial and represented and promised to Plaintiff and to Rock that Suarez, through Auckland, would fund the Correia Litigation and that Suarez preferred to spend his unlimited resources in funding the litigation through Auckland instead of paying Correia any kind of monetary consideration.

14. Plaintiff's reliance in Defendant's promises made by Suarez's agents including Azevedo, Rock, and Hupsel was reasonable. Until recently, Plaintiff also legally represented Auckland, and many of its subsidiaries, in many legal matters concerning real estate assets located in Miami Beach and Auckland always promptly paid out all of its legal bills over a two (2) year period. It was Rock during the scope of his services as consultant for Defendant that introduced Plaintiff to Defendant to represent it and its subsidiaries on various legal matters in Florida, including prior a prior litigation filed in this court. In fact, Plaintiff was instructed to submit its invoices to Defendant's agents for payment as set forth in the e-mail correspondence regarding a prior legal bill that was paid as set forth in **Exhibit E**, translated e-mail communications between Plaintiff and Defendant's agents, Hupsel and Azevedo regarding payment of legal bills for Correia's Litigation.

15. The Correia Litigation was a *de facto* proxy war between Correia and Suarez. Correia knew, and documents he produced in discovery revealed that, Correia intended to harm and attack Suarez by pursuing the Correia Litigation against Rock because Suarez is untouchable in Brazil. On the other hand, Suarez and Correia were, and may up to this date remain, engaged in litigation against each other for defamation. Upon information and belief, Suarez wanted to cause Correia to spend

significant resources in the Correia Litigation in order to weaken his financial position and force a favorable resolution of the Brazilian litigations between Correia and his entities on the one hand, and Suarez and his entities on the other hand.

16. Eventually Correia sought to mediate with Rock to resolve the Correia Litigation and Suarez, through Azevedo, ultimately agreed that Rock could participate in mediation and potentially compromise the matter if certain ground rules were followed. The Correia Litigation was ultimately settled at mediation, but after mediation, and as recently as July of last year, Azevedo was still reaching out to Plaintiff to obtain information or ask questions about the Correia Litigation that had an impact in the Brazilian litigations between Suarez and Correia.

17. On October 17, 2022, Plaintiff issued its final invoice for the Correia Litigation in the amount of $161,024.60 ($147,303.50 for legal fees for services rendered and $13,721.10 for out-of-pocket expenses). *See* **Exhibit A**. The invoice remains unpaid as of the filing of this action.

18. The fact that Suarez, through his entity Auckland, was funding the legal representation of Rock in the Correia Litigation was disclosed to Correia's counsel pursuant to the directions of Azevedo. Azevedo directed Rock, who ultimately instructed Plaintiff, to represent to Correia's counsel that the Correia Litigation would never settle, and Rock would resist all of his discovery attempts forcefully.

19. As a result of this disclosure, Correia's counsel filed a Motion to Disqualify Plaintiff advancing the argument that Plaintiff, and undersigned counsel, had a conflict of interest because Correia was making very favorable settlement proposals to Rock and Rock was rejecting said proposals. *See* **Exhibit F**, Motion to Disqualify. Correia's counsel argued that because Suarez was funding the attorney's fees and costs of Rock, Plaintiff and undersigned counsel were conflicted. The Motion to Disqualify was never set for hearing because Rock, Plaintiff's actual client was the ultimate decision maker as to all settlement decisions of the Correia Litigation.

20. In response to the Motion to Disqualify, undersigned counsel filed an affidavit in the Correia Litigation, which is true and correct since as alleged above, Plaintiff never spoke directly with Suarez about the Correia Litigation and it was his entity, the Defendant, that assumed the financial responsibility of paying the legal bills of Rock relating to the Correia Litigation.  In the process of collecting the exhibits to file the instant lawsuit, Plaintiff for the first time noted that the initial $30,000.00 payment to undertake the legal representation of Rock was actually wired from what appears to be a personal account of Suarez instead of from Defendant, but that payment covered many activities related to the Project that pre-dated the filing of the Correia Litigation.

21. On August 24, 2021, Azevedo, on behalf of Defendant, re-assured Plaintiff by making statements on the phone to undersigned counsel on a conference call in which Rock also participated that all of the legal bills relating to the Correia Litigation would be paid.  This call happened after the Correia Litigation was resolved through mediation.  Recently, Defendant has indicated that it does not intend to pay Plaintiff the outstanding invoice attached hereto as **Exhibit A**.

<u>**COUNT I**</u>
<u>**PROMISSORY ESTOPPEL**</u>

22. Plaintiff readopts and realleges by reference paragraphs 1 through 21 as if fully set forth herein.

23. Defendant acting on its behalf and through its agents, including Azevedo, Rock, and Hupsel, promised Plaintiff to pay for all the legal fees and costs associated with representing Rock as a defendant and counter-plaintiff in the Correa Litigation.  Defendant Auckland actually paid all of Plaintiff's legal invoices issued for the Correia Litigation except for the last invoice issued on October 17, 2022 in the amount of $161,024.60.

24.  Plaintiff detrimentally relied on these promises from Defendant's agents, including Azevedo, Hupsel, and Rock, that it would pay the invoices for the work performed by Plaintiff. Defendant reasonably expected that its promise was going to induce reliance by Plaintiff by

7

performing legal work and advancing out of pocket expenses to Rock. In fact, Defendant's agent Azevedo interacted with Rock and Plaintiff's attorneys almost on a daily basis during the pendency of the Correia Litigation.

25. Recently, Defendant has reneged on its promise to pay the last invoice for the Correia Litigation, but Plaintiff already completed all the work and advanced expenses such as mediator and translation fees in order to fully resolve the Correia Litigation.

26. Injustice can only be avoided by enforcement of the promise made by the Defendant to pay Plaintiff for its work and incurred out of pocket expenses.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment in favor of Plaintiff and against Auckland Holdings, LLC for promissory estoppel, to include pre- and post-judgment interest, costs, and any further and other relief that this Court deems just and appropriate.

Dated: March 22, 2023

Respectfully submitted,

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
777 Arthur Godfrey Road, Suite 402
Miami Beach, Florida 33140
E-mail: rodrigo@rdasilvalaw.com
Telephone:     (305) 615-1434
Facsimile:      (305) 615-1435

By: /s/ *Rodrigo S. Da Silva*
    Rodrigo S. Da Silva, Esq.
    Florida Bar No. 0088600
    *Counsel for Plaintiff, Law Offices of Rodrigo S. Da Silva, P.A.*